UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LANCE EUGENE HUNTER JR.,<br><br>    Defendant. | 4:15-CR-40071-LLP<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

Defendant Lance Eugene Hunter, Jr. is before the court on an indictment charging him with attempted commercial sex trafficking in violation of 18 U.S.C. §§ 1591 and 1594(a).  See Docket No. 2.  Mr. Hunter now moves the court to suppress statements he gave during an April 10, 2015 interview with South Dakota Department of Criminal Investigation (DCI) Agent Josh Twedt.  See Docket No. 17.  The United States of America ("government") resists the motion.  See Docket No. 19.  The motion has been referred to this magistrate judge to hold an evidentiary hearing and to recommend a disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, District Judge.  The following is this court's recommended disposition.

**FACTS**

An evidentiary hearing was held on this matter on July 23, 2015. Mr. Hunter was present in person along with his lawyer, Assistant Federal Public Defender Jason Tupman. The government was represented by its Assistant United States Attorney, Jeff Clapper. One witness (Agent Twedt) testified at the hearing and one exhibit (a DVD video recording of Mr. Hunter's interview with Agent Twedt) was received into evidence. From this evidence the court makes the following findings of fact.

In April 2015 federal and state law enforcement authorities, members of the South Dakota Internet Crimes Against Children (ICAC) were conducting an online undercover sting operation. The goal of the operation was to find persons who wanted to arrange commercial sex acts with minors. Ads were posted on Craigslist and Backpage.com. Mr. Hunter allegedly responded to one of these ads.

On April 10, 2015, Mr. Hunter was arrested and transported the Sioux Falls Law Enforcement Center. He was placed in an interview room at approximately 6:55 p.m. At approximately 7:10 p.m., South Dakota DCI Agent Josh Twedt entered the interview room. Agent Twedt informed Mr. Hunter he was under arrest and that he would like to ask Mr. Hunter some questions. Agent Twedt advised Mr. Hunter of his Miranda[1] rights. Mr. Hunter indicated he understood his Miranda rights and he agreed to speak with Agent Twedt. Their conversation continued until approximately 7:36 p.m. The theme of Mr.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Hunter's responses to Agent Twedt's questions was that Mr. Hunter's intent in arranging a meeting with the fictional minor was to help the victim and to understand her motivation in engaging in such conduct.

When Agent Twedt explained the possible consequences of a felony conviction and asked Mr. Hunter if he regularly engaged in conduct to help victims of sex trafficking, Mr. Hunter said "I guess um....I feel like I am getting kind of put in a corner and made into something that is perceived you know and you guys have a right and everything so you, I feel like you are trying to . . ." At that point, Agent Twedt interrupted Mr. Hunter and told him he was going to leave the interview room to go get some other paperwork. Agent Twedt offered Mr. Hunter something to drink, which Mr. Hunter accepted. At 7:37, the following conversation occurred:

Mr. Hunter: Is there any way a lawyer could be here?

Agent Twedt: Yeah.

Mr. Hunter: How long is that gonna be?

Agent Twedt: I don't know, I don't call lawyers. They have to come here.

Mr. Hunter: I know I have the right to one, I don't know how the system works though. So I don't know if it's going to be an hour, two hours, three hours. So I guess I don't want to be led down a path, because you guys do this every day. So I don't want to be led down a path that I don't need to be led down, because no one's really watching out for me and my potential, what you just said list of things. So, that's where I'm coming from is cuz everybody has an agenda and I get that.

Agent Twedt: I have an agenda to do my job, obviously.

| | |
|---|---|
| Mr. Hunter: | And I'm not saying anything besides that. I understand that completely but I don't want to be led down a path because I want to make sure it's the correct path and not just a path. |
| Agent Twedt: | Right so what I am telling you is I don't call lawyers umm . . . to be here.  So I understand, you know this is confusing not every situation is the same.  So I understand it's confusing about what's going on.  Umm . . . yes, you have a right to a lawyer. I don't want there to be anything ambiguous out there about whether you want a one here or not.  But obviously we only have one opportunity to talk right here and that is totally, totally your choice. OK?  I definitely, you know, I wanna to talk about this.  I would like to continue to talk about this.  If you don't want to talk about this that doesn't mean that it is going to go away. |
| Mr. Hunter: | Oh I understand. |
| Agent Twedt: | And so I just want to be clear and I will let you sit here for a few minutes and I will come back in and I will talk to you and I will and answer any other questions you have.  But like I said I don't call lawyers or anything like that. |
| Mr. Hunter: | So how would I get one then? |
| Agent Twedt: | If you want one right now just tell me that you want one. OK, but and then our conversations are done because I can't talk to you. So, I am going to leave you with that. |
| Mr. Hunter: | Oh, ok. |
| Agent Twedt: | I'm going to leave you with that.  So just bear with me, I am going to get you a cup of water and I will come back in and we will just talk again, we are going to go through this again. So just hang tight, I will be right back in I promise, OK? |

(Agent Twedt leaves the room for five minutes)

At 7:45 p.m. Agent Twedt re-entered the interview room and resumed the interview without mentioning the issue of whether Mr. Hunter wished to have an attorney present.  He asked Mr. Hunter for the passcode for his cell phone. Mr. Hunter resisted giving him the passcode.  Agent Twedt insisted that if

4

Mr. Hunter did not give him the passcode, law enforcement would just get a search warrant anyway. Mr. Hunter again indicated he believed he was being led down a path he did not wish to be led down. After Mr. Hunter resisted giving Agent Twedt his passcode for the second time, he asked Agent Twedt "can I get a lawyer?" Agent Twedt said "yes you can," and terminated the interview at 7:49 p.m.

## DISCUSSION

**A.     Whether Mr. Hunter Unambiguously Requested Counsel.**

The Fifth Amendment provides in part, "No person shall be . . . compelled in any criminal case to be a witness against himself . . ." U.S. Const. amend. V. The government bears a "heavy burden to demonstrate that [Mr. Hunter] knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475. If a suspect expresses his desire to deal with law enforcement only through counsel, he cannot be subjected to further interrogation until a lawyer has been made available unless the suspect initiates further communication with law enforcement. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

The Fifth Amendment right to counsel attaches at custodial interrogation, which usually occurs earlier in the legal process than the Sixth Amendment right to counsel, which attaches with the initiation of adversary judicial proceedings, whether by formal charge, preliminary hearing, indictment, information or arraignment. Hall v. State of Iowa, 705 F.2d 283,

5

289 and n. 4. (8th Cir. 1983).  The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "At the pre-indictment stage, appellant's sixth Amendment rights have not attached; . . ."  In Re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 243 (2d Cir. 1986).  See also Kirby v. Illinois, 406 U.S. 682, 688 (1972) (plurality opinion):

> [t]he initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.

Kirby, 406 U.S. at 689-90.

"[T]he Fifth Amendment right to counsel is not an independent right, rather it stems from the privilege against self-incrimination."  Hall, 705 F.2d at 289, n.4 (citing Kennedy v. Fairman, 618 F.2d 1242, 1247-48 (7th Cir.1980)).  "Thus, the Fifth Amendment right to counsel only protects a defendant's privilege against making incriminating statements against himself."  Hall, 705 F.2d at n. 4 (citing Smith v. Wainright, 581 F.2d 1149, 1151-52 (5th Cir. 1978)).  In this instance, there is no indication that adversary judicial proceedings had been initiated when the interview which forms the basis of Mr. Hunter's motion to suppress occurred.  Mr. Hunter therefore properly bases his motion solely on the Fifth Amendment.

Mr. Hunter's statements must be suppressed, however, only if his request for an attorney was "clear and unambiguous." United States v. Mohr, 772 F.3d 1143, 1146 (8th Cir. 2014) (citing Davis v. United States, 512 U.S. 452, 461-62 (1994)). "Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of any attorney." Davis, 512 U.S. at 459 (citation omitted).

> A 'suspect must unambiguously request counsel and if he does not articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney . . . Edwards does not require that the officers stop questioning the suspect. Davis, 512 U.S. at 459.
>
> ***
> Supreme Court precedent does not require the cessation of questioning 'if a suspect makes a reference to any attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel.' Davis, 512 U.S. at 459.

Dormire v. Wilkinson 249 F.3d 801, 804 (8th Cir. 2001). Also, if the reference to an attorney is ambiguous, it is *good* but not *required* practice for the police to ask questions to clarify whether the suspect does want an attorney present. Id. at fn. 2 (citing Davis, 512 U.S. at 461).

When a suspect has requested counsel during a custodial interview a valid waiver of that right "cannot be established by showing only that he responded to further police-initiated interrogation even if he has been advised of his rights." Edwards, 451 U.S. at 484-85. If a suspect unambiguously requests counsel at any time before or during an interview, he is not subject to

7

further questioning until counsel has been made available to him unless he initiates the conversation.  Edwards, 451 U.S. at 484-85.  This prophylactic rule is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights."  Michigan v. Harvey, 494 U.S. 344, 350 (1990).  This principle was explained by the Supreme Court in Smith v. Illinois, 469 U.S. 91 (1984) when the Court held "under the clear logical force of settled precedent, an accused's *post request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself."  Id. at 100 (emphasis in original).

In this case, the parties disagree about whether, at any time before Agent Twedt terminated his interview, Mr. Hunter made any "statement that [could] reasonably be construed to be an expression of a desire for the assistance of any attorney."  Davis, 512 U.S. at 459 (citation omitted).  To make that determination the court canvasses both the factual bases and the legal conclusions of Eighth Circuit and United States Supreme Court cases wherein the clarity of a suspect's request for counsel was at issue.

In Davis, Mr. Davis was suspected of murdering Keith Shackleton, a fellow sailor on the Navy base where they both were stationed.  Davis, 512 U.S. at 454.  During questioning by Naval Intelligence, after having been advised of his rights and about an hour and a half into the interview, Davis said "maybe I should talk to a lawyer."  Id. at 455.  At the suppression hearing, the officers who interviewed Mr. Davis explained,

> We made it very clear that we're not here to violate his rights, that if he wants a lawyer, then we will stop any kind of questioning with

8

>him, that we weren't going to pursue the matter unless we have it clarified is he asking for a lawyer or is he just making a comment about a lawyer, and he said 'No, I'm not asking for a lawyer,' and then he continued on and said 'No, I don't want a lawyer.' . . .

Id. (citation omitted). The questioning ceased, however, when, an hour later, Mr. Davis said, "I think I want a lawyer before I say anything else." Id. (citation omitted). Before trial, however, Mr. Davis moved to suppress all statements made during the interview after his first statement about obtaining counsel, i.e. "maybe I should talk to a lawyer." Id.

The Supreme Court began by noting that the rigid prophylactic rule of Edwards requires courts to determine whether a suspect has actually invoked his right to counsel. Id. at 458. This inquiry is an objective one. Id. That it is likely a suspect would wish counsel to be present is not the test. Id. "Rather, the suspect must unambiguously request counsel. As we have observed, 'a statement either is such an assertion of the right to counsel or it is not.'" Id. at 459 (citation omitted). "Although a suspect need not 'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect." Id. (citations omitted).

The Supreme Court recognized that requiring a clear assertion might "disadvantage some suspects who—because of fear, intimidation, lack of linguistic skills or a variety of other reasons—will not clearly articulate their right to counsel although they actually want to have a lawyer present." Id. at

460.  The Court concluded, however, that the Miranda warning itself was sufficient to dispel whatever coercion was inherent in the interrogation process, and that in considering how a suspect must invoke the right to counsel the need for effective law enforcement must also be considered.  Id. at 460-61.  The Court held, therefore, that "after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney."  Id. at 461.  The Court concluded by affirming the lower court's finding that Mr. Davis' remark, "maybe I should talk to a lawyer," was not a clear request for an attorney.  Id. at 462.

In Dormire the suspect said "could I call my lawyer?"  Dormire, 249 F.3d at 805.  That statement was too ambiguous to constitute a request for counsel and the Eighth Circuit found on habeas review that the statements were correctly suppressed.  Id.[2]   In United States v. Kelly, 329 F.3d 624 (8th Cir.

---

[2] In support of his position, Mr. Hunter cites United States v. Hunter, 708 F.3d 938 (7th Cir. 2013) in which the suspect asked "can you call my attorney?"  Id. at 940.  The Seventh Circuit found that question constituted an unambiguous request for counsel under Davis because it indicated a certain and present desire to consult with counsel.  Id. at 943.  Though the question asked by the suspect in Hunter is very similar to the question asked by the suspect in Dormire, Eighth Circuit precedent is binding on this court but Seventh Circuit precedent is not.

The court acknowledges Dormire is a habeas case wherein the standard of review merely requires the federal court to determine whether the state court reasonably applied clearly established federal law. The Eighth Circuit's discussion in Dormire, however, indicates its review went beyond what was required and answered the underlying substantive question. Dormire, 249 F.3d at 805.  The court found the *officer* (not the state court) reasonably interpreted Mr. Wilkinson's statement as an inquiry about his right to call a lawyer rather than an unambiguous request to do so.  Id.   "Wilkinson's question was not

10

2003) the suspect's inquiry to the agent "do you know any good lawyers?" was too ambiguous to constitute a request for counsel and the statements were correctly suppressed. Id. at p. 630. In United States v. Cloud, 594 F.3d 1042 (8th Cir. 2010), a rather confusing exchange occurred between the officer and the suspect:

> Q: Okay, do you wish to speak with an attorney?
> A: Yeah. Probably, cuz you ain't explainin' nothin'.
> Q: Do you want—do you want to talk to an attorney, or do you want me to explain things or—or don't you want to talk? You know, I got to know before I get into detail here if you're willing ah- talk to me or not. That's what I need to know.
> A: No, I just want to get my money and leave.
> Q: Well that's not going to happen right now. And we need to talk about why that's not going to happen.
> A: Well why? Tell me.

Cloud, 594 F.3d at 1045. The court found the suspect did not clearly request the assistance of counsel, and his statements were correctly not suppressed. Id. at 1046.

In United States v. Havlik, 710 F.3d 818 (8th Cir. 2013) the suspect said "I don't have a lawyer. I guess I need to get one, don't I?" Id. at 822. The Eighth Circuit decided his words were too ambiguous to constitute a request for counsel and the statements were correctly not suppressed. Id. The court reasoned the suspect could have been asking the officer's opinion about whether an attorney was needed, and his subsequent statement "I guess you

---

such a clear and unambiguous request for counsel that [the officer] was required to stop his interrogation." Id. The Court also noted "[b]ecause Wilkinson's 'statement was not an unambiguous or unequivocal request for counsel, the officers had no obligation to stop questioning him or ask clarifying questions.'" Id. at n. 2. (citing Davis, 512 U.S. at 461-62). For these reasons, Dormire is persuasive and Hunter is not.

11

better get me a lawyer then," was too equivocal to trigger the Edwards rule.  Id.

In Mohr, 772 F.3d at 1145, the suspect asked as he was walking into the interview room, "should I get a lawyer at this time?   …..I think I should get one."  Next, when the officers asked his permission to record the interview, he said "I want my lawyer . . . if you want this recorded, I want a lawyer present."  Id.  The interview proceeded (unrecorded) and the Eighth Circuit found the defendant's references to his wish for a lawyer were equivocal and conditional, and therefore insufficient to invoke his right to counsel.  The Eighth Circuit concluded the district court correctly refused to suppress the statements.  Id. at 1146.

Mr. Hunter's statements, made beginning at approximately 7:37 p.m. are measured against these precedential constraints ("[i]s there any way a lawyer could be here? . . .. How long is that gonna be? . . . I know I have the right to one, I don't know how the system works though.  So I don't know if it's going to be an hour, two hours, three hours.  So how would I get one then?).  The court finds Mr. Hunter's statements were not sufficient to clearly and unambiguously invoke his right to counsel.  Instead of the clear and unambiguous request for counsel that is required by Davis, Agent Twedt reasonably interpreted Mr. Hunter's statements as an inquiry about how the process of obtaining counsel would work, should he choose to invoke his right to do so.

After Agent Twedt explained to Mr. Hunter that if he wanted an attorney present "right now just tell me that you want one . . ." Agent Twedt left the room for Mr. Hunter to ponder his situation.  The recording of the interview

12

makes it abundantly clear (indeed, Agent Twedt candidly admitted to Mr. Hunter) that Agent Twedt's preference was that Mr. Hunter did not invoke his right to counsel. The law is the law, however and the law provides that Agent Twedt was not required to initiate a clarification of Mr. Hunter's wishes and Agent Twedt could continue the interview until *Mr. Hunter* clearly indicated *Mr. Hunter*'s wishes. Davis, 512 U.S. at 461.

When Agent Twedt returned he did not revisit the issue of Mr. Hunter's decision about the presence of counsel but instead he resumed the interview. That Mr. Hunter said anything at all without <u>clearly</u> invoking his <u>Miranda</u> right to counsel implied that he waived it. Cf. Berghuis v. Thomkins, 560 U.S. 370, 371 (2010) ("if the accused makes an 'ambiguous or equivocal' statement or no statement, the police are not required to end the interrogation, or ask questions to clarify the accused's intent.") (citing Davis, 512 U.S. at 461-62)). In Berghuis, the Supreme Court decided that "[i]f the State establishes that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver." Berghuis, 560 U.S. at 371. The Court reasoned that if, after a valid Miranda warning the accused answers questions, he has impliedly waived his Miranda rights. Id. at 371. "Had he wanted to remain silent he could have said nothing in response or unambiguously invoked his Miranda rights, ending the interrogation." Id.

Berghuis applies squarely to the entire interview but most importantly to the very few utterances made by Mr. Hunter after Agent Twedt returned to the interview room. Just before he left, Agent Twedt explained that if Mr. Hunter

13

wanted a lawyer present he needed to "right now just tell me that you want one" but if that happened, their conversation would immediately end.  When Agent Twedt returned, Mr. Hunter did not "right now just tell [Agent Twedt] that he want[ed] one," but instead the conversation continued a few more moments.  "Had he wanted to remain silent, he could have said nothing in response or unambiguously invoked his Miranda rights, ending the interrogation."   Mr. Hunter did neither.

## CONCLUSION

Because Supreme Court and Eighth Circuit precedent indicates Mr. Hunter's statements about the presence of an attorney were ambiguous and/or equivocal, his motion to suppress (Docket 17) should be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 27th day of July, 2015.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge